IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL LAWRENCE PRATT #293701 :
    Petitioner
                                                     :
          v.                                                  CIVIL ACTION NO. DKC-09-425
                                                     :
JOHN S. WOLFE, et al.,
    Respondents                       :

## MEMORANDUM OPINION

Before the court is a pro se petition for writ of habeas corpus filed by Maryland prisoner Michael Lawrence Pratt, the State's substantive responses and exhibits filed in connection therewith (Paper No. 18), and Pratt's reply concerning procedural default. Document 24. After reviewing these documents, the court finds no need for an evidentiary hearing.[1] *See* Rule 8(a), <u>Rules Governing Section 2254 Cases in the United States District Courts</u>; *see also* 28 U.S.C. § 2254(e)(2). For reasons set forth below, the court denies relief and dismisses the Petition with prejudice.

### The Crime

The relevant details of this senseless and brutal crime were summarized on direct appeal by the Court of Special Appeals of Maryland:

> According to a confession by appellant, Michael Lawrence Pratt, he, along with Thomas Weems and a friend of Weems's known as "Slim," drove, on the evening of December 28, 1998, to the home of Marcus Simons. The purpose of the trip to the Simons home was to rob the Simons family. Appellant, about 9 p.m. that evening, went to the door of the Simons' residence carrying an antifreeze jug and asked Marcus Simons for some water. Mr. Simons filled the jug with water, whereupon appellant and his two cohorts burst into the home. Weems raped Annette Simons, Marcus Simons' wife, and appellant forced Mr. Simons to take off his pants and kneel on the floor. Appellant then fatally shot Mr.

---

[1] Petitioner requests appointment of an investigator to prove "actual innocence." As there is no need for an evidentiary hearing, the request which is contained in Paper No. 25, is denied.

> Simons. The three intruders next stole stereo components and other personal property from the Simons home and fled.

Paper No. 18, Exhibit 14 at 1; *see also* Exhibit 6 at 57-60, 75-87; Exhibit 7 at 57-79.

## **Procedural History**

In February of 1999, Pratt was indicted in the Circuit Court for Prince George's County on thirteen counts of murder, robbery, handgun violations and sexual offenses. A jury subsequently convicted Pratt of first-degree felony murder, first-degree burglary, robbery with a deadly weapon, and use of a handgun in the commission of a crime of violence. Paper No. 18, Exhibit 9 at 6-9. On May 5, 2000, Pratt was sentenced to life imprisonment without the possibility of parole and a consecutive twenty-year sentence. *Id.*, Exhibit 10 at 29.

On direct appeal to the Court of Special Appeals of Maryland, Pratt argued that the trial court erred in (1) allowing evidence before the jury that he was a repeat offender, and (2) allowing the State to elicit that his co-defendant gave a statement implicating him in the crimes without giving a limiting instruction.[2] *Id.*, Exhibit 12 at 2. On March 23, 2001, the intermediate appellate court affirmed Pratt's convictions. Pratt did not seek further review by way of certiorari request.

---

[2] When called to testify at trial, Detective Smith was asked whether he "confront[ed] him [Pratt] with Mr. Weems' statement implicating him in the case." Paper No. 18, Exhibit 7 at 36. Defense counsel objected on Sixth Amendment grounds. The court overruled the objection, stating that the evidence was not being admitted substantively, but only as to Weems' state of mind. *Id.*, Exhibit 7 at 37-38. The state's attorney then asked:

  Q. Detective Smith, in connection with attempting to question Mr. Pratt about the homicide of Mr. Simons, did you confront him with the fact that Thomas Weems had given you a statement implicating Mr. Pratt in connection with that offense?

  A Yes.

  Q. Did you actually read Mr. Weems' statement to him?

  A. Yes.

*Id.*, Exhibit 7 at 38-39. Defense counsel did not request a limiting instruction with respect to what Pratt was told regarding the statement, and did not object to the substance of the testimony. This issue was deemed waived on appeal. Pratt did not ask Maryland's highest appellate court to review the intermediate court's ruling. Co-defendant Weems was tried separately. It does not appear that the third participant in the crime was apprehended.

2

On July 21, 2001, Pratt initiated post-conviction proceedings in the Circuit Court for Prince George's County. Paper No. 18, Exhibits 1 and 15. The Petition, as supplemented, alleged that: (1) trial counsel was ineffective for failing to (a) move in limine to limit a detective's testimony with respect to Weems' statement; (b) request a limiting instruction with respect to Weems' statement to the police; (c) present an alibi defense; (d) emphasize sufficiently that a delay in presentment should be weighed heavily in the determination of the voluntariness of his statement to police; and (e) request a mistrial when a State witness violated an in limine ruling prohibiting reference to him as a repeat offender. Pratt also alleged that (2) the trial court violated his right to confrontation by admitting testimony regarding Weems' statement. *Id*., Exhibits 15 and 16.

At his July 30, 2007, post-conviction hearing, Pratt abandoned his claim of trial court error, relying instead on his ineffective assistance of counsel claims. *Id*., Exhibit 17. Relief was denied on August 22, 2007. *Id*., Exhibit 18. Pratt's application for leave to appeal, raising all five ineffective assistance of counsel claims as well as a claim of cumulative error, was summarily denied by the Court of Special Appeals on April 1, 2008. *Id*., Exhibits 19, 20 and 21.

Pratt now raises the following claims in support of his federal habeas corpus petition:

(1)   Counsel was ineffective for failing to:

   (a) emphasize sufficiently that a delay in presentment should be weighed heavily in the determination of the voluntariness of his statement to police;
   (b) request a limiting instruction with respect to his co-defendant's statement to police; and
   (c) request a mistrial when a state witness violated an in limine ruling barring reference to his status as a repeat offender; and

(2)   The trial court violated his right to confrontation by admitting his co-defendant's statement.

Paper No. 1 at 6.

3

## Threshold Considerations

### Timeliness

Respondents do not contend - and the record does not show - that Pratt's petition is time-barred.

### Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), those petitioning for federal habeas corpus relief must first exhaust each claim by pursuing remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. §§ 2254(b)-( c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of a post-conviction petition, followed by petitioning the Court of Special Appeals for leave to appeal. Pratt no longer has any state direct review or collateral review remedies available to him with respect to the claims raised in this court. Thus, his claims will be considered exhausted for the purpose of federal habeas corpus review.

### Procedural Default

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (failure to note timely appeal); *Murray v. Carrier*, 477 U. S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram,* 409 U.S. 41, 46 (1972) (failure to raise claim during post conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481

(D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). Thus, claims which have never been presented in the state courts--or claims which were not exhausted properly in the state courts–will not be examined on the merits if review of the claims in state court would be barred by state procedural rules. *See Johnson v. Maryland*, 915 F.2d 892, 895 (4th Cir. 1990).

The bar, however, is not absolute. In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the Supreme Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting from the failure. *See also Murray*, 477 U.S. at 495; *Engle v. Isaac*, 456 U.S. 107, 129 (1982).

Even if a petitioner cannot show cause and prejudice to excuse procedural default, a court must still consider whether it should reach the merits of the petitioner's claims. To that end, in an effort to "balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case," *Schlup*, 513 U.S. at 324, the Supreme Court has recognized a miscarriage-of-justice exception. Thus, in appropriate cases, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " *House v. Bell*, 547 U.S. 518, 536 (2006), citing *Murray, supra*, at 495 (quoting *Engle*, supra, at 135). This miscarriage of justice standard is directly linked to innocence. *Schlup*, 513 U.S. at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 315. The miscarriage of justice exception applies where a petitioner shows that "a constitutional

violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U. S. at 496.

Respondents argue that Pratt failed to seek certiorari after the intermediate appellate court denied his claim of trial court error regarding Smith's testimony, precluding this court from considering the claim because it is procedurally defaulted. Respondents also contend that the post-conviction court's finding that the claim was waived on appeal (and thus barred from post-conviction review) mandates that it be barred from review under the procedural default doctrine. Paper No. 18 at 34-35. The court concurs. Although Pratt states generally that his conviction is a miscarriage of justice, nothing in the record suggests that Pratt is actually innocent. As the claim is procedurally defaulted, it will not be examined on the merits here.

**Standard of Review**

Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).[3] Section 2254(d) also requires federal courts to give great deference to a state court's

---

[3] Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of

6

factual findings. *See Lenz v. Washington,* 444 F. 3d 295, 299 (4th Cir. 2006). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Using these standards, the court now examines Pratt's ineffective assistance of counsel claims.

### Allegations of Ineffective Assistance of Counsel

A criminal defendant's right to effective assistance of counsel is protected by the Sixth Amendment to the United States Constitution. Constitutionally ineffective assistance of counsel claims are governed by standards established in *Strickland v. Washington,* 466 U.S. 668 (1984).[4] To prevail on a claim of ineffective assistance of counsel, a petitioner must show his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland,* 466 U.S. at 687. To demonstrate actual prejudice, a petitioner must

---

materially indistinguishable facts." *Williams v. Taylor,* 529 at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

[4] The Court reaffirmed and applied these standards in an ineffective assistance of counsel context in *Bell v. Cone*, 535 U.S.685 (2002). It explained:

> For respondent to succeed, however, he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. *See Williams, supra*, at 411. Rather, he must show [the state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Id*. at 698-9.

7

show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. According to *Strickland,* there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *See id.* at 688-89. A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101(1955)). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697.

### Delay In Presentment

Pratt first argues that trial counsel failed to advance sufficiently the effect of a violation of his state law right to prompt presentment on the voluntariness of his confession. He contends that "[w]hile trial counsel moved for instructions concerning delay in presentment, trial counsel did not argue for additional instructions, that the court and the jury give the deliberate delay in presentment the proper weight it deserved." Paper No. 1 at 6.

Respondents argue that this claim turns entirely on the application of state law,[5] precluding this court's examination of the issue under *Estelle v. McGuire*, 502 U.S. 62, 67-75 (1991) (federal habeas relief unavailable for errors of state law). While the court agrees that examination of the issue centered on state law, the court notes that the standard test for voluntariness under Maryland law at the time of Pratt's trial paralleled the analysis mandated by

---

[5] At time of trial, Maryland Rule 4-212(f) provided, in pertinent part, that "[w]hen a defendant is arrested without a warrant, the defendant shall be taken before a judicial offer of the District Court without unnecessary delay and in no event later than 24 hours after arrest." *See also* Md. Code Ann., Cts. & Jud. Proc. Art., § 10-912 (2006 Repl. Vol.). The Court of Appeals of Maryland later held "that any deliberate and unnecessary delay in presenting an accused before a District Court Commissioner, in violation of Rule 4-212(e) or (f) must be given very heavy weight in determining whether a resulting confessional is voluntary, because the violation creates its own aura of suspicion." *Williams v. State*, 375 Md. 404, 434 (2003).

8

existing Supreme Court precedent: whether, considering the totality of the circumstances, a confession was obtained involuntarily after police have overborne the will of the accused. *See Haynes v. Washington,* 373 U.S. 503 (1963); *Townsend v. Sain*, 372 U.S. 293 (1963). Coercive police activity is a necessary predicate before a confession may be found to be involuntary and, therefore, inadmissible, even though the confession was prompted by mental or emotional conditions that prevent it from being the product of a rational mind and free will. *See Colorado v. Connelly*, 479 U.S. 157 (1986). A delay in presentment is one factor relevant to the determination.[6]

The state post-conviction court examined trial counsel's attempts to suppress Pratt's confession, and found as follows:

> On January 7, 1999, at approximately 1:33 a.m., Petitioner was arrested at 713 Harvard Street in Washington, D.C. pursuant to an arrest warrant. Following his arrest, he was transported via a District of Columbia cruiser to police headquarters where he was taken into an interview room. At approximately 2:10 a.m., Detective Smith of the Prince George's County Police Department entered the interview room with Mr. Pratt. At that time, Detective Smith began to talk with Mr. Pratt, realized he was under the influence of alcohol and stopped the interview.
>
> The following day, Mr. Pratt was extradited by the Sheriff's Department to Prince George's County and transported to District III lock-up. Mr. Pratt was escorted to an interview room in CID at approximately 9:00 p.m. on January 8, 1999. Detective Smith entered that room about thirty minutes later and advised the Defendant of his rights. Detective Smith then took a statement from the Defendant regarding the events that occurred December 28, 1998. The statement began at 9:45 p.m. and concluded at 12:16 a.m., including three breaks, 10:55 p.m., 11:50 p.m., and 12:10 a.m. The Defendant was presented to the Commissioner at 7:54 a.m. on January 9, 1999.

---

[6] Other factors, not at issue here, include: youth (*Haley v. Ohio*, 332 U.S. 596 (1948)); insanity (*Blackburn v. Alabama*, 361 U.S. 199 (1960)); low intelligence (*Thomas v. North Carolina*, 447 F.2d 1320 (4th Cir. 1975)); repeated and prolonged nature of questioning (*Ashcraft v. Tennessee*, 322 U.S. 143 (1944)); physical coercion (*Brown v. Mississippi*, 297 U.S. 278 (1936)); psychological coercion (*Blackburn, supra*.); or threats and promises (*Arizona v. Fulminante*, 499 U.S. 279 (1991)).

Mr. Pratt contends that [his attorney] provided ineffective assistance in failing to argue that his statement was involuntary and/or in failing to request an appropriate instruction because he was not promptly presented to a commissioner, as required by Maryland Rule 4-212(e). Petitioner contends that he was held in custody for 54 hours without being taken before a commissioner. He further argues that the other prisoners who were detained with the defendant, were taken before a commissioner and Detective Smith purposely chose to interrogate him and obtain a confession instead of allowing him to be presented before a commissioner. Petitioner points to *Hiligh v. State,* 375 Md. 456 (2003), *Williams v. State*, 375 Md. 404 (2003), *Odum v. State*, 156 Md. App. 184 (2004), and *Perez v. State*, 155 Md. App. 1, 841 A.2d 372 (2004), in which the Maryland Appellate Courts held that any unnecessary, deliberate delay in presentment to a commissioner, "designed for the sole purpose of soliciting a confession," should be given "very heavy weight" in a court's determination of the voluntariness of a confession. *Williams*, 375 Md. at 416.

The State responds that Mr. Trainor did not have the benefit of *Williams*, and therefore, his failure to make this argument does not constitute deficient performance. Moreover, the State argues that Petitioner's attorneys did argue the proper standard at the time and the proper jury instruction was given. The State contends that prompt presentment was only one factor to consider. Moreover, the State argues that Pratt was not in Maryland for an extended period of time before he was taken to the Commissioner.

Maryland Rule 4-212(e) provides, in pertinent part, that once an arrest warrant is executed, "[t]he defendant shall be taken before a judicial officer of the District Court without unnecessary delay and in no event later than 24 hours after arrest. . . ." Section 10-912 of the Courts and Judicial Proceedings Article, however, provides:

> (a) Confession not rendered inadmissible. – A confession may not be excluded from evidence solely because the defendant was not taken before a judicial officer after arrest within any time period specified by Title 4 of the Maryland Rules.
>
> (b) Effect of failure to comply strictly with Title 4 of the Maryland Rules. – Failure to strictly comply with the provisions of Title 4 of the

> Maryland Rules pertaining to taking a defendant before a judicial officer after arrest is only one factor, among others, to be considered by the court in deciding the voluntariness and admissibility of a confession.

Md. Code (1973, 1998 Repl. Vol.), § 10-912 of the Courts and Judicial Proceedings Article.

Additionally, case law in Maryland has held that the requirement of prompt presentment is inapplicable if the defendant is held out-of-state. *Facon v. State*, 375 Md. 435, 825 A.2d 1096 (2003), *Davis v. State*, 42 Md. App. 546, 559-60, 402 A.2d 77 (1979, *cert. denied*, 286 Md. 746 (1979) (court considered reach of predecessor of Md. Rule 4-212(e) and held that when a person is within custody of a Maryland officer outside of Maryland, the prompt presentment rule is inapplicable). It is clear from the record that Petitioner was taken to the Commissioner approximately ten (10) hours after being extradited to Prince George's County.

At the motions hearing, Mr. Trainor did argue that Mr. Pratt's statement was involuntary. As part of that argument, Mr. Trainor mentioned, several times, the length of time Mr. Pratt was questioned. *See* Motions Hearing Transcript, "MHT," Vol. 1, 58-73, Vol. 2, at 121-23. At trial, counsel did elicit testimony regarding the delay in presentment and the detective's choice to interrogate versus presentment. TRT, Vol. 4, at 75, 78-80. Additionally, the Court instructed the jury to consider "[w]hether the defendant was taken before a District Court Commissioner without unnecessary delay following arrest, and if not, whether that affected the voluntariness of the statement." TRT, Vol. 5, at 63 (derived from Maryland Pattern Jury Instruction 3:18). Finally, in closing, trial counsel argued that Petitioner was not taken to the commissioner with the others, was not taken to the Commissioner for fifty-four (54) hours, and specifically states:

> "[i]n figuring whether the statement is voluntary consider all the circumstances. Whether the defendant was taken before a District Court Commissioner without unnecessary delay following arrest. If not, whether that affected the voluntariness of the statement. The State, Mr. Manico, has to prove to you, beyond a reasonable doubt, that the delay was not unnecessary." TRT, Vol. 5, at 112-114.

> While conceding that *Williams* and its progeny were not yet decided at the time of his trial, as well as, the fact that counsel did pose questions and argument regarding the delay in Petitioner's presentment to the Commissioner, and the Court did provide a jury instruction on this issue, Petitioner nonetheless argues that trial counsel should have argued the importance of the delay and why the delay was so prejudicial.
>
> The Court does not find Petitioner's argument persuasive. Section 10-912 of the Courts and Judicial Proceedings Article emphasizes that a delay in "taking a defendant before a judicial officer after arrest is only one factor, among others, to be considered by the court in deciding the voluntariness and admissibility of a confession." Not having the benefit of *Williams*, *Odum*, and *Hiligh*, Mr. Trainor reasonably included the delay in presentment as a single factor in his voluntariness argument, without placing additional emphasis on it. The Court finds, therefore, that Mr. Trainor's representation of Mr. Pratt was not deficient in this regard.

Exhibit 18 at 13-16 (footnotes omitted).

Under Section 2254(e)(1), the state post-conviction court's findings are presumptively correct absent clear and convincing evidence to the contrary. The post conviction court's determination that Pratt failed to meet his burden of establishing that his attorney's representation was deficient constitutes a reasonable application of *Strickland* to the facts of the case, and withstands scrutiny under 28 U.S.C. § 2254(d).

### Limiting Instruction

Pratt next claims trial counsel failed to request a limiting instruction with respect to testimony regarding Weems' statement,[7] thus precluding appellate review as to the use of the statement. The post-conviction court found trial counsel deficient for failing to request a limiting instruction, but also found no prejudice resulting from the error:

---

[7] Co-defendant Thomas Weems, who was not tried with Pratt, pleaded guilty on July 29, 1999, to felony murder, first-degree burglary, robbery with a deadly weapon, first-degree rape, and first-degree sex offense, and was subsequently sentenced to life imprisonment without the possibility of parole for the murder conviction and additional consecutive terms of imprisonment for the other convictions. *See Weems v. Maryland*, Criminal No. CT9902158 (Circuit Court for Prince George's County).

12

Petitioner contends that trial counsel was ineffective because he did not request an instruction that the testimony concerning Weems' statement was not to be considered by the jury as substantive evidence of guilt.

On direct appeal, Defendant raised the issue of whether the trial court erred in allowing the State to elicit that the co-defendant gave a statement implicating him in these crimes, without giving a limiting instruction. The Court of Special Appeals held that this issue was waived because defense counsel never asked the trial court for a limiting instruction.

State argues that there was no evidence provided that a limiting instruction would have changed the outcome of the case. State contends that there was not a lot of testimony regarding the co-defendant's statement but that there was overwhelming evidence to convict contained in defendant's own very specific statement.

In the instant case, the trial court instructed the jury as follows:

> In making your decision, you must consider the evidence in this case, that is, testimony from the witness stand, physical evidence or exhibits admitted into evidence, and stipulations of the parties.
>
> The following things are not evidence and you should not give them any weight or consideration. The charging document. Inadmissible or stricken evidence. Questions and objections of counsel.

TRT, Vol. 5, at 58-59. The trial court's instruction was derived from Maryland Pattern Jury Instruction 3:00 (1998) (What constitutes evidence").

Although Detective Smith did not testify as to the actual substance of co-defendant Weems' statement, he did answer the State's question in the affirmative that Weems had implicated Defendant in his statement. Accordingly, this Court finds that the apparent content of Weems' statement was placed before the jury. *See e.g., Bell v. State*, 114 Md. App. 480, 496, 691 A.2d 233 (1997) (*citing Hagz v. State*, 110 Md. App. 194, 676 A.2d 992 (1996).

The determination of whether an instruction must be given turns on whether there is any evidence in the case that supports the instruction. *See, e.g., Binnie v. State,* 321 Md. 572, 581, 583 A.2d 1037, 1041 (1991) (holding in theft case that defendant's uncorroborated statement showing honest belief as to right to property was sufficient to send to jury honest belief defense); *Smith v. State*, 302 Md. 175, 181, 486 A.2d 196, 199 (1985) (holding that accused's alibi statement was sufficient to require jury instruction even though uncorroborated).

Maryland Rules provide further guidance for trial courts and counsel regarding the requirement of jury instructions. Md. Rule 5-105, in pertinent part, provides: "when evidence is admitted that is admissible for one purpose but not for another purpose, the court *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly" (emphasis added). As stated above, the trial court specifically stated that the court was overruling the objection because the statement was being admitted to show state of mind and not as substantive evidence. Accordingly, this Court finds that there was evidence to support requesting such a limiting instruction.

In *Bell v. State*, 114 Md. App. 480, 496, 691 A.2d 233 (1997), the Court of Special Appeals addressed a confrontation issue regarding absent eyewitness' hearsay statement being admitted into evidence. During cross-examination of Bell, the State questioned him about a non-testifying witness' statement to the police. It was noted by the Court that the statement at issue did not satisfy the hearsay exception. *Id.* at 490. Consequently, the Court concluded that the trial court erred in allowing the State indirectly to present the non-testifying witness' hearsay statement, as it was a violation of the defendant's constitutional right to confront an important witness. *Id.* at 499-500. Additionally, the trial court did not give a jury instruction cautioning the State's use of the non-testifying witness' statement, in other words, the jury was never advised to use the statement only for impeachment purposes and not for its substantive value. *Id.* at 502.

While in the instant case, unlike *Bell*, the trial court found that the statement at issue did satisfy a hearsay exception, namely state of mind[2], like in *Bell*, the jury was never advised as to the limiting nature of the evidence. Accordingly, this Court finds that it was deficient for trial counsel to fail to request a limiting instruction regarding the use of the testimony by Detective Smith relating the implication of Weems' statement.[3]

14

However, taking the evidence against Defendant as a whole, this Court finds that there is not a substantial possibility that had counsel asked for a limiting instruction regarding co-defendant's statement, that the outcome of the trial would have been different. Defendant gave a very specific, very detailed, very lengthy statement that stands apart from co-defendant's statement referred to in Detective Smith's testimony. See TRT Vol. 4, at 56-63. The statement given by Petitioner/Defendant indicated that he went to pick up Weems on the evening of December 28, along with one of Weems' friends. TRT, Vol. 4, at 56-57. He indicated in his statement the description of the car they rode in and where each person was seated therein. *Id*. His statement included a description of the Simon's house and how he, Weems, and Weems' friend, entered the house. *Id*. at 58. Pratt indicated that he chased Mr. Simons upstairs but then took him downstairs, just the two of them. *Id*. at 59. In his statement, Pratt admitted that he shot Mr. Simons three times, after Weems told him to "leave him." *Id*. at 59-60. He also indicated that Weems gave him the gun, which was already loaded, and he left the gun with Weems. *Id*. at 60. Finally, he indicated that he saw Weems take a "black box out of the stereo component set." *Id*.

Additionally, other witness testimony, when taken with the statement, is more than sufficient to convict.[4] Mrs. Simons, wife of deceased and Mrs. Carney, mother of deceased, both of whom were present at the house the evening the crime was committed, testified at trial. While their testimony reflects that neither could identify Petitioner as one of the men in the house that night, their testimony mirrors the sequence of events given by Petitioner in his statement to the police regarding the events of that fateful evening.

Mrs. Carney testified that she lived in her son's house. TRT, Vol. 3, at 56. She further testified that on the evening in question at approximately 9 p.m., she was upstairs lying in bed, when she heard a "frantic doorbell ring," then heard her son running up the stairs calling her name. *Id*. at 58. She testified that she saw her son run past her bedroom and another man was chasing him.[5] Mrs. Carney then got up and ran after them only to run into "another man" who pushed her into the bedroom with Mrs. Simons and her two grandchildren and made them all lay on the floor and "not look up." *Id*. at 59, 62. She then testified that the "gunman took him [her son] out" and she subsequently heard three gunshots. *Id*. She could not see the gunman's face but noted that the two men were young African Americans. *Id*. at 62.

Mrs. Simons testified that on the evening her husband was killed she was asleep on the floor of the master bedroom in her home around 9 or 9:30 p.m. TRT, Vol. 3, 80. She further testified that around 9:30 she heard some running on the stairs and "Marty, my mother-in-law, and two other people," ran in my bedroom. *Id*. She was then told by the two young men to lay face down on the floor. *Id*. at 81. Mrs. Simons testified that one of the guys had a weapon but she could not see his face because it was dark in the room and she was on the floor.[6] She testified that one of the men forced her to perform fellatio and engage in vaginal intercourse by threatening the life of her children and husband. *Id*. at 84-86. Mrs. Simons finally testified that she heard three gunshots and called 911. *Id*. at 87.

Accordingly, this Court does not believe that the failure to request a limiting instruction regarding the use of co-defendant's statement is enough to undermine the confidence in the jury's verdict of guilt. Therefore, this Court finds that while trial counsel's performance in this regard was deficient, it was not prejudicial to the Defendant. As such, the Defendant is not entitled to relief on this claim.

---

[2] Md. Rule 5-803(b)(3).

[3] This Court is not determining whether admitting co-defendant's statement through the testimony of Detective Smith is a violation of the Confrontation Clause of the Sixth Amendment, made applicable to the states through the Fourteenth Amendment. Nor is this Court determining whether the evidence is an exception to the hearsay rule. The trial court found that the testimony was not in violation of the Confrontation Clause and that it satisfied the state of mind exception to the hearsay rule. This Court is not disturbing that finding. The only issue before this Court is whether trial counsel was ineffective for failing to request a limiting instruction regarding the codefendant's statement.

Exhibit 18 at 7-12 (some footnotes omitted). Based on the record, which clearly shows Pratt's detailed confession to the crimes as corroborated by the testimony of the surviving victims, the post-conviction court's findings will be upheld pursuant to 28 U.S.C. § 2254(d), and relief denied as to this claim.

## Mistrial

Pratt also claims trial counsel failed to request a mistrial after a police witness referenced the Repeat Offender's Unit, in violation of a ruling made pursuant to a motion in limine. Paper

16

No. 1 at 6. The post-conviction court declined to grant relief on this claim, finding:

> Petitioner argues that trial counsel provided ineffective assistance when he failed to request a mistrial after Detective Smith testified that defendant was a repeat offender. Three months earlier the trial court had granted a motion in limine keeping out the defendant's "repeat offender" status. At trial, in response to a question from defense counsel regarding the making of any reports following Mr. Pratt's arrest, Detective Smith responded: "I believe the Repeat Offenders Unit wrote a commander's log." TRT, Vol. 4, at 76. Whereupon an objection was made by defense counsel and the parties approached the bench. After conversation between the bench and counsel, the Court stated, "I would have sustained the objection, but your question kind of left that open. I think that the only thing at this point is it will emphasize it. I'll do what you want me to do." Id. at 76-77. Defense counsel replied: "I'll move on." Id. at 77.
>
> This issue was raised in the direct appeal and was held to be waived by the Court of Special Appeals because counsel failed to request a mistrial. However, in a footnote, the Court of Special Appeals stated:
>
>> "Even if a mistrial had been requested and denied, we would not have reversed appellant's conviction. A mistrial is 'an extreme sanction' that is resorted to only when 'such overwhelming prejudice has occurred that no other remedy will suffice to cure the prejudice.' [internal citations omitted]. Under the circumstances of this case, it does not appear that appellant was denied a fair trial by virtue of Detective Smith's testimony."
>
> It is well settled that any allegation of error that has been finally litigated may not be litigated by a post conviction petition. An allegation is finally litigated "when . . . an appellate court of the State decides on the merits of the allegation . . . on direct appeal." Crim. Proc. Art., § 7-106(a); *see also Hunt v. State*, 345 Md. 122, cert. denied, 521 U.S. 1131 (1997). Accordingly, this Court finds that the issue is finally litigated.
>
> Even if this issue is not finally litigated, this Court finds that the Petitioner is not entitled to relief on this ground. Tactical decisions by counsel do not render his performance deficient. *State v. Matthews*, 58 Md. App. 243 (1984) (where counsel has a valid tactical reason for his actions, his actions do not constitute

17

> ineffective assistance of counsel); *see c.f. Terry v. State*, 332 Md. 329 (1993) (it is a valid tactic not to object to the introduction of improper evidence where the reason counsel does not object is to prevent the error from being emphasized to the jury by the judge's curative instructions). It is clear from the trial transcript that defense counsel chose to move on and not draw any further attention to the detective's testimony regarding the log composed by the Repeat Offender's Unit. Therefore, this Court finds that counsel was not deficient for failing to request a mistrial.

Exhibit 18 at 16-18.

The post-conviction court's findings are presumptively correct and are supported in the record. The single sentence uttered by Detective Smith was ambiguous, as it did not define what a "commander's log" was, and did not specify that Pratt was a repeat offender. Clearly the isolated response, elicited by defense counsel, did not affect Pratt's right to a fair trial. Further, trial counsel's tactical decision to forego a curative instruction so as to avoid drawing attention to the remark is sound. Accordingly, the state court's ruling was a reasonable application of *Strickland* under 28 U.S.C. § 2254(d).

This court has considered the trial record in light of the deferential standard for evaluating state court rulings. The findings of the state post-conviction court are supported in the record. The decision of that court is objectively reasonable, aligns with Supreme Court precedent, and survives scrutiny under 28 U.S.C. § 2254(d) and (e).

## Certificate of Appealability

A habeas petitioner has no absolute entitlement to appeal a district court's denial of his motion. *See* 28 U.S.C. § 2253(c) (1). "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at §2253(c) (2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282, (2004)

(quoting *Slack v. McDaniel*, 529 U.S. 473, 484, (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36, (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983).

The court will not issue a certificate of appealability because Pratt has not made the requisite showing. Denial of a certificate of appealability does not prevent Pratt from seeking permission to file a successive petition or pursuing his claims upon receipt of that permission.

Based on the foregoing analysis, habeas corpus relief is denied and a certificate of appealability will not be issued. A separate order follows.

Date: <u>June 3, 2010</u>                    _____/s/_____
                                             DEBORAH K. CHASANOW
                                             United States District Judge